## BARNARD et al. v. STANDARD OIL CO. OF INDIANA et al.

### No. 7091.

Circuit Court of Appeals, Seventh Circuit.

Feb. 21, 1940.

Peck, Shaffer, Williams & Gorman, Robert N. Gorman, and John Colville Taylor, all of Cincinnati, Ohio, and Oscar Haney, of Hammond, Ind., for appellants.

Frederick C. Crumpacker, Edwin H. Friedrich, and Bernard A. Petrie, all of Hammond, Ind. (Austin V. Wood, of Wheeling, W. Va., of counsel), for appellees.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellants are the members of Dominick and Dominick, a New York partnership, engaged in the stock brokerage business in New York City. They instituted this action in equity to compel the Standard Oil Company of Indiana to transfer to appellants one hundred shares of that corporation's common stock, represented by a certificate then in the name of Forrest L. Jackson. Appellants had demanded such transfer prior to suit, and the company had refused to make it on the ground that Jackson's purported signature on the accompanying power of attorney was not genuine.

Jackson was made a party defendant, and the controversy, in reality, is between him and appellants. His answer alleged forgery of the stock power attached to the certificate, and asked that he be declared the owner of the certificate; that it be delivered to him; and that the purported transfer be rescinded. Special findings of fact and conclusions of law were made, and it was decreed that appellants take nothing by their bill, and that Jackson is the owner of the certificate, and the clerk of the court was directed to deliver it to him.

The following facts, as found, are supported by substantial evidence: On April 2, 1929, Jackson purchased one hundred shares of Cities Service stock through its sales representative, Henry L. Doherty and Company. The sale was financed in part by cash and a note for $11,000 signed by Henry E. Stewart, payable to the Doherty Company. This note was executed by Stewart, a friend and business

associate of Jackson, because he was better known to the payee than was Jackson. It was executed at an office of the Doherty Company in Columbus, Ohio, and, with a certificate as collateral representing one hundred shares of the common capital stock (old) of Cities Service Company, was sent to the Doherty Company's office at Cincinnati where they were to be held.

Later when the value of the collateral declined, a call was made upon Stewart by the Doherty Company, and in response thereto, Jackson forwarded two hundred additional shares of Cities Service (new). On January 1, 1930, the Doherty Company made another call for additional collateral other than Cities Service stock, and in response thereto Jackson sent the certificate of stock here in question, and in his letter[1] accompanying it, which was written by Stewart and thoughtlessly dated January 1, 1929, a request was made to the Doherty Company that it send to Jackson a new collateral form note with power of attorney for his execution so that Stewart would be relieved of the obligation and the account carried in Jackson's name. At the time the certificate was forwarded it was not endorsed by Jackson, nor was a separate stock power executed. No new note nor power of attorney was ever forwarded by the Doherty Company to Jackson for his execution, nor was response made to his letter.

No demand for payment of either principal or interest of the $11,000 note given to the Doherty Company has been made upon Jackson. He has attempted to locate that note without avail, and has made a demand on the Doherty Company therefor, offering to pay it upon the return of the note and his stocks forwarded by him to the company. This demand was refused and Jackson afterwards sued the company in an Ohio court for relief in the premises, and that action was pending when the findings of the District Court were filed.

Subsequently, in June, 1930, Amor W. Shaffer, Manager of the Cincinnati office of Doherty and Company, took the certificate in question, forged Jackson's name to the power of attorney and borrowed money in his own name at the Brotherhood Railway Clerks National Bank, giving the certificate as collateral to his note.

The Stewart note for $11,000 was not discounted at that bank. Whether or not Shaffer ever defaulted on his note at the Brotherhood Bank, with which he placed the certificate in question as collateral, is not in evidence, and its contents are not disclosed by this record.

Appellants as stockbrokers were ordered to sell one hundred shares of Standard Oil of Indiana for the Brotherhood Bank, which delivered to appellants against this sale the certificate in question. When appellants attempted to effect a transfer of this certificate, they were notified by the Standard Oil Company that the signature on the stock power covering the assignment did not conform to the signature of Jackson on file in their office, and for this reason the transfer was refused. In order to make the delivery on this sale, appellants, on the order of the Brotherhood Bank for this account, purchased one hundred shares of Standard Oil Company stock in the market.

Appellants had many dealings with the Brotherhood Bank in selling stocks on its orders, with respect to which the bank guaranteed the signatures on the various stock powers and assignments thus sold. Many of these signatures including that on the stock power of the certificate in question proved to be forgeries. Claims against the bank were made by appellants on these guarantees and suit was filed in January, 1932. It resulted in a settlement

---

[1] "January 1, 1929.

Henry L. Doherty & Company,
Cincinnati, Ohio.

　　Attention: Mr. Shaffer, Manager.
Dear Mr. Shaffer:

　　Complying with our conversation of yesterday we hand you certificate No. D121350 for 100 shares Standard Oil of Indiana.

　　Upon receipt of this will you please make out a new collateral form note with Power of Attorney and send to F. L. Jackson, Woodsfield, Ohio, together with the amount of interest due and he will sign note, Power of Attorney and send you a check for interest due.

　　We thank you very sincerely for the way you took care of this during the depression and Mr. Jackson has confidence in Cities Service and wants to continue to carry it.

　　I hope you will be able to do this and that it will be under this arrangement satisfactory to you until the stock goes up so that we can sell something else and bring this home.

　　Very truly yours,

HS:LB　　　　——— President."

between appellants and the bank. By the terms of this settlement, among other things, the bank transferred whatever title it had to the certificate in question to appellants, and withdrew its guarantee of Jackson's signature on the certificate in question. Jackson was not a party to this suit nor to the settlement agreement.

The sole question presented is whether or not Jackson ever parted with ownership of the certificate of stock.

The Uniform Stock Transfer Act has been adopted by both Ohio and Indiana. General Code of Ohio, 8673-1; Burns Indiana Statutes (1933) section 25-701. Both statutes provide:

"Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery. of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person."

In Angus v. Cincinnati Morris Plan Bank, 56 Ohio App. 444, 10 N.E.2d 1019, 1020, this section of the Ohio Statute was construed, and the court said:

"Under the Uniform Stock Transfer Act, title to stock can be transferred in only one of two ways. Either by indorsement of the signature of the holder, as it appears on the certificate, or by an independent instrument, accomplishing the same effect. Section 8673-1, General Code.

"The forgery of the name of the certificate holder is ineffective to transfer title to the stock. * * * It is our conclusion, therefore, that appellant, although acting in good faith, must respond for its unwarranted exercise of control over the property of the appellee."

Appellant, however, contends that Jackson effectually parted with his ownership of the certificate under the ruling in Bolles v. Toledo Trust Co., 132 Ohio St. 21, 4 N.E.2d 917, 920. The court there said:

"Certificates of corporate stock, negotiable instruments * * * evidenced by writing generally, may be the subjects of gifts without assignment or indorsement, but to make effective gifts of such objects, carrying rights to all they represent, there must be the present intention to give plus delivery. [Citing cases].

"An examination of a number of authorities, with due regard for their reasoning, is persuasive that a transfer of certificates of corporate stock on the books of the corporation is not requisite to a valid completed gift of such certificates as between the donor and donee, and, further, that the provisions of the Uniform Stock Transfer Act * * * to the effect that title to certificates shall pass by indorsement as of the time of the registration of the transfer, do not alter the rule, because such provisions were inserted for the protection of the corporation alone, so that it might safely deal in the payment of dividends, or otherwise, with the person in whose name the stock was registered. * * *

"The real stumbling block we meet in this case is the matter of delivery. Is there clear and convincing evidence of the delivery of the securities involved, with relinquishment of dominion and control over them? Where is the definite and tangible proof as to how, when, and where any such delivery occurred?"

The court held that delivery was not proved.

■■ That case was dealing with a gift inter vivos, and if the language there used can be considered as applicable to the present controversy we think the evidence here falls short of sustaining appellants' contention. Before appellants can recover under the theory of the Bolles case, it is clear that it must have been proved that there was a delivery of the stock by Jackson, coupled with his intention to transfer, not at some future time, but at the time he delivered the certificate. It is not denied that a physical delivery was made of the certificate, but that of itself was not sufficient. Even under the Bolles case, to constitute a transfer of title, there must have been an intention on the part of Jackson to transfer the title. That was a conclusion of fact to be drawn by the District Court from all the pertinent circumstances. From these circumstances the District Court could not say as a matter of law, nor can we, that Jackson intended to transfer the title to the certificate at the time he delivered it to Do-

**420**

herty and Company. The conclusion of the District Court in this respect was one of fact. It was based on substantial evidence and we cannot disturb it.

██ ██ It is conceded that neither appellants, nor the immediate purported assignee, had any better title to the certificate than did Doherty and Company, and it seems clear to us that at no time did the latter have anything more than the naked possession of the certificate, and so far as this record discloses, we are unable to say that they ever claimed anything more. Jackson, if he did not so desire, was not compelled to assign this certificate to Doherty and Company, and under the circumstances that company had no power to transfer the title to it, either equitable or legal, without Jackson's authorization under section 1 of the Uniform Stock Transfer Act. We think it cannot be said that the provisions of that Act were for the protection of the issuing corporation alone, and the Angus case, in effect, so holds.

If, under the circumstances, Jackson must be presumed to have intended an equitable transfer of his title to Doherty and Company for the protection of his loan from Doherty and Company, we do not understand that that company could transfer such collateral or dispose of it in any way so long as Jackson was not in default on his loan. This record does not disclose that he was ever in default on his loan. However, it does disclose that the physical transfer of the certificate by the agent of Doherty and Company was not made because Jackson's loan was in default, nor was it made for the purpose of securing money to liquidate that loan. It was a forgery pure and simple by the agent who alone profited by it.

Under these circumstances it cannot be said that Jackson ever became obligated to the Brotherhood Bank or that it ever became the owner of the certificate of stock. Jackson's note was never held by that bank nor by appellants, and it must be remembered that this action is not based on that note. Indeed, no one seems to know what has become of it. Jackson says that he is able and willing to pay it whenever he can find it but that when he does pay it he wants the delivery of the collateral, and the certificate of stock now in issue. This we think he is entitled to, and we cannot disturb the decree of the District Court.

Decree affirmed.